IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID M. TICKLE.,                )
                                 )
            Plaintiff,           )
                                 )
        v.                       )    1:16CV204
                                 )
NANCY A. BERRYHILL,[1]           )
Acting Commissioner of Social Security,  )
                                 )
            Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David Tickle ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 8, 2013, alleging a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

January 1, 2008. (Tr. at 13, 240-52.)[2] His applications were denied initially (Tr. at 13, 96-112, 137-44) and upon reconsideration (Tr. at 13, 113-36, 151-68). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 13, 169-70.) Plaintiff, along with his attorney, attended the subsequent hearing on January 12, 2015, at which time he amended his alleged onset date to December 1, 2012. (Tr. at 13, 273.) The ALJ ultimately continued the hearing in order to obtain medical expert testimony. At the supplemental hearing, held on May 18, 2015, Plaintiff again testified, as did Dr. Peter Schosheim, an orthopedic medical expert, and Laura Lykins, a vocational expert. (Tr. at 13.)

Following the hearings, the ALJ concluded that Plaintiff was disabled within the meaning of the Act from December 1, 2012 through December 31, 2014. (Tr. at 17.) He further found that, beginning January 1, 2015, medical improvement occurred such that Plaintiff no longer met the requirements of the Act. (Tr. at 21.) On January 16, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation and brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage

3

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled."

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

4

Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

When determining whether a claimant who has previously been found to be disabled continues to be disabled, the ALJ uses an eight-step sequential evaluation process. This eight-step process provides that: (1) if the claimant is engaging in substantial gainful activity,

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether "medical improvement" has occurred;[5] (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement, or the medical improvement is found to be unrelated to the claimant's ability to work, disability continues, subject to certain regulatory exceptions; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are "severe," and if not, disability ends; (7) if the claimant's impairments are considered "severe," the ALJ will determine the claimant's RFC, and if the claimant is able to perform past relevant work, disability ends; (8) if the claimant is unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work given his or her residual functional capacity, age, education, and past work experience. See 20 C.F.R. §§ 404.1594(f), 416.994(b)(5); McDaniel v. Astrue, No. 1:07–CV–779, 2009 WL 929555, at *3 n.3 (M.D.N.C. Apr. 3, 2009) (concluding that the eight-step sequential analysis would apply in cases where the ALJ finds a closed period of disability).

---

[5] The Social Security regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." Id.

III.     DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that, from December 1, 2012 to December 31, 2014, Plaintiff suffered from the following severe impairments:

> left knee degenerative joint disease, status post total knee replacement; right ankle degenerative joint disease; right (dominant) rotator cuff tear; and chronic obstructive pulmonary disease.

(Tr. at 17.) The ALJ found at step three that Plaintiff's left knee and right ankle impairments met the requirements of 20 C.F.R., Part 404, Subpt. P, Appx. 1, §§ 1.02(A) (hereinafter "Listing 1.02(A)") between December 1, 2012 and December 31, 2014. (Tr. at 18-20.) Therefore, Plaintiff was under a disability, as defined by the Act, during that period. (Tr. at 21.)

The ALJ further determined that, beginning January 1, 2015, Plaintiff's disability ended, in light of his improvement following his knee replacement surgery. (Tr. at 21-22.) The ALJ therefore followed the eight-step sequential evaluation process outlined above, and found that as of January 1, 2015, Plaintiff had not developed any new impairments, so his impairments remained the same. (Tr. at 16-17, 21.) The ALJ then found that as of January 1, 2015, Plaintiff's impairments did not meet or equal a Listing. (Tr. at 21.) The ALJ further found that medical improvement had occurred as of January 1, 2015, and that the improvement related to Plaintiff's ability to work.[6] (Tr. at 21.) The ALJ therefore considered Plaintiff's

---

[6] See 20 C.F.R. § 404.1594(c)(3)(i) ("If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made. If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work. Appendix 1 of this subpart describes impairments which, if severe enough, affect

7

RFC and concluded that Plaintiff could perform sedentary work with myriad additional restrictions. Specifically, the ALJ found that:

> beginning January 1, 2015, the claimant has had the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. He can stand [ ] and[/]or walk for a total of 2 hours in an 8 [hour] day and sit for 6 hours in an 8 hour day. He can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally balance and stoop, and can never kneel, crouch, and crawl. With the dominant arm, he can occasionally reach overhead, and frequently in all other directions. He can perform work that does not require exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations). He can have frequent exposure to extreme cold, extreme heat, and humidity (as defined in the Selected Characteristics of Occupations). He can have frequent exposure to respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation).

(Tr. at 22.) The ALJ found that all of Plaintiff's past relevant work exceeded his RFC (Tr. at 24), but determined that, given Plaintiff's age, education, work experience, and RFC, along with the vocational expert's testimony as to these factors, Plaintiff could perform other jobs available in the national economy beginning January 1, 2015. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was no longer disabled under the Act as of that date. (Tr. at 26.)

In the present appeal, Plaintiff contends that "[t]he ALJ inadequately explained his finding that Plaintiff was no longer disabled as of January 1, 2015 due to medical improvement and this finding is not supported by the evidence." (Pl.'s Br. [Doc #12] at 4.) In addition, Plaintiff contends that the Appeals Council erred by failing to remand the case to the ALJ in

---

a person's ability to work. If the appendix level of severity is met or equaled, the individual is deemed, in the absence of evidence to the contrary, to be unable to engage in substantial gainful activity. If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.")

8

light of a new medical opinion from Plaintiff's treating orthopedic surgeon. (Id. at 8-9.) The Court considers each contention in turn.

A. Medical Improvement

In finding that Plaintiff was entitled to a closed period of disability, the ALJ in the present case determined that from December 1, 2012 to December 31, 2014, Plaintiff met Listing 1.02(A), which deals with the lower extremities and requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.02(A); (Tr. at 18-20). "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.00(B)(2)(b)(1).

At Plaintiff's supplemental hearing, the impartial orthopedic medical expert, Dr. Schosheim, testified that, "due to the claimant's severe arthritic condition of his left knee and arthritis of his right ankle and his limitations in his right upper extremity, the claimant equaled Listings 1.02(A)(B) [sic] from December 1, 2012, until January 1, 2015." (Tr. at 19, 42-43, 45.) At step three of the sequential analysis, the ALJ adopted Dr. Schosheim's opinion, concluding that Plaintiff met Listing 1.02(A). (Tr. at 18-20.) Dr. Schosheim went on to testify that, beginning in December 2014, approximately six months after Plaintiff's total left knee replacement, Plaintiff "had gone from a walker to a cane, [his] range of motion had improved,

9

and that at that point [Plaintiff] was having much less discomfort in his knee." (Tr. at 43, 19.) Based on his review of medical records to this effect, Dr. Schosheim opined that from January 2015 forward, Plaintiff "no longer equaled a listing." (Tr. at 43, 19, 21.) Again, the ALJ adopted Dr. Schosheim's opinion in concluding that medical improvement occurred as of January 1, 2015, in that Plaintiff "no longer ha[d] an impairment or combination of impairments that me[t] or medically equal[ed] the severity" of a listed impairment. (Tr. at 21, 19.) In making this finding that ALJ explained that,

> [r]egarding the claimant's left knee and right ankle impairments [as of January 2015], the evidence does not show gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint. Moreover, this impairment does not result in inability to perform fine and gross movements effectively, as defined in 1.00B2c, as required by Listing 1.02.

(Tr. at 21.) Citing Plaintiff's treatment notes from December 2014, the ALJ further noted that Plaintiff "had responded well regarding his left knee, was walking with a non-antalgic gait, and his range of motion improved . . . [He] went from a walker to a cane and was getting off the cane." (Tr. at 19, 552-53.)

Plaintiff contends that the ALJ's determination is not supported by substantial evidence. Plaintiff contends that he "did not experience significant pain relief," and that his ongoing pain is reflected in his testimony and in the treatment notes from his May 2015 examination. (Pl.'s Br. at 5.) However, the ALJ considered Plaintiff's testimony and the treatment records at length. (Tr. at 19, 22.) The ALJ noted that:

> Despite the claimant complaints of pain and no improvement in functioning, treatment notes in December 2014 demonstrate that his left knee replacement was successful. He was walking with a non-antalgic gait, and his range of motion improved. Upon examination, left knee flexion was mildly limited at

> 120 degrees, and extension was full. Mild effusion was found . . . . X-rays found no evidence of loosening or in[f]ection and no soft tissue abnormalities. The claimant reported only diffuse knee pain, worse with prolonged walking and standing. He was prescribed a neoprene knee sleeve and diclofenac.

(Tr. at 22, 552-53.) The ALJ further considered the May 2015 notes by Plaintiff's treating orthopedist, Dr. Del Gaizo, noting that:

> The claimant in May 2015 reported some diffuse pain, worse with prolonged walking and standing, but he was overall pleased with the results of the surgery. Range of motion remained mildly limited at 120 degrees, and only mild diffuse tenderness was noted. His ligament[s] were stable. X-rays of his left knee demonstrated well-positioned components without signs of loosening or failure.

(Tr. at 22, 562-63). Thus, the ALJ considered the medical evidence at length, including the evidence from May 2015, and concluded that Plaintiff no longer met Listing 1.02A. This conclusion was sufficiently explained to permit judicial review, and was supported by substantial evidence, including the medical evidence and the opinion of the medical expert.[7]

Plaintiff also contends that the ALJ failed to consider the evidence of his worsening pain in his right knee. However, the ALJ considered the evidence regarding Plaintiff's right knee, and noted that:

> X-rays in December 2014 showed mild right tibiofemoral joint space narrowing. Imaging in May 2015 reflected that osteoarthritis was progressive, but the claimant had mild effusion, some diffuse tenderness, and slight right-sided antalgic gait. A cortisone injection provided near immediate pain relief.

---

[7] The finding of medical improvement was also supported by Plaintiff's testimony, at least at the first hearing. At the hearing on January 12, 2015, Plaintiff testified that at that time, which was approximately six months after the surgery on his left knee, he could walk 15 to 20 minutes with a cane and would then need to sit for an hour. (Tr. at 19, 84.) He also testified that after the knee replacement surgery, his leg was straighter (Tr. at 22, 90-91), he could move around better to get to the kitchen and go to the bathroom (Tr. at 22, 91-92), and his pain was down from a 10 to a 7 or 8 (Tr. at 19, 80-81). Plaintiff clearly continued to have pain and functional limitations after the surgery, and those issues were addressed by the ALJ in formulating the RFC, but Plaintiff's testimony in January 2015 reflects that he experienced at least some improvement following the surgery. At the subsequent hearing in May 2015, Plaintiff testified that his leg looked better but did not feel any better, and that there had been no functional improvement. (Tr. at 22, 56.) The ALJ noted all of this testimony in making the determinations in this case. (Tr. at 19, 22.)

(Tr. at 17-18.) The May 2015 imaging records were characterized by Dr. Del Gaizo as reflecting "moderate degenerative joint disease with mild varus deformity but not bone on bone articulation." (Tr. at 563.) At the May 2015 appointment, Dr. Del Gaizo assessed Plaintiff as having "moderate right knee arthritis." (Tr. at 563.) Dr. Del Gaizo administered a steroid injection in Plaintiff's right knee, and Plaintiff "felt near immediate pain relief." (Tr. at 563.) Dr. Del Gaizo advised Plaintiff to follow-up with him in two years. (Tr. at 563.) In addition, although the ALJ found that Plaintiff's right knee was not a severe impairment at step two of the sequential evaluation, the ALJ still considered the evidence regarding Plaintiff's right knee in formulating the RFC. The ALJ considered Plaintiff's right knee at length at both hearings, and conveyed the imaging results from May 2015 to the medical expert at the supplemental hearing, for consideration as part of the RFC evaluation. (Tr. at 46-50, 58-59, 87-89, 92-93.) The ALJ also noted Plaintiff's testimony regarding his right knee as part of the RFC determination (Tr. at 22), and in setting the RFC the ALJ relied upon the opinion of the medical expert after they had discussed Plaintiff's right knee issues at the hearing and after the medical expert had reviewed the May 2015 treatment records. Thus, the ALJ did not fail to consider the evidence in the record regarding Plaintiff's right knee.

Plaintiff also contends that the ALJ failed to evaluate the effect of Plaintiff's pain on his ability to function and failed to incorporate Plaintiff's pain into the RFC. However, the ALJ specifically discussed and accounted for Plaintiff's pain. (Tr. at 23-24.) In discussing the testimony of the vocational expert, the ALJ made reference to the vocational expert's testimony that for a person to engage in unskilled competitive work, the person would need to perform at least at 85% productivity during an eight-hour workday. (Tr. at 25, 65-66.) The

12

ALJ concluded that it would be too speculative to determine a specific percent of time that Plaintiff would be unproductive or off task due to pain, but that he would be within the limits provided by the vocational expert in light of the other limitations included in the RFC to reflect Plaintiff's limitations as a result of pain. (Tr. at 25.) Thus, the ALJ clearly evaluated Plaintiff's pain and the effect of that pain on his ability to function, and addressed those limitations in formulating the RFC and presenting hypotheticals to the vocational expert.

Plaintiff also contends that the ALJ failed to adequately explain his decision, and in particular failed to explain why his RFC determination did not include all of the limitations noted by Plaintiff's treating physician, Dr. Del Gaizo. Plaintiff notes that Dr. Del Gaizo opined that Plaintiff must periodically alternate between sitting and standing and also opined that Plaintiff could stand and/or walk less than 2 hours in an 8 hour work day. (Tr. 568-69.) However, the ALJ gave significant weight to Dr. Del Gaizo's opinion as Plaintiff's treating physician, and adopted most of Dr. Del Gaizo's recommended limitations. (Tr. at 22-23.) To the extent he did not completely adopt Dr. Del Gaizo's opinion, the ALJ specifically addressed Dr. Del Gaizo's opinion as follows:

> Dr. Del Gaizo opined that the claimant was able to stand and/or walk for less than 2 hours in an 8-hour workday. Although the statement form directed that he provide an explanation, the doctor did not. The doctor opined that the claimant had to alternate "periodically" between sitting and standing. The doctor did not give time periods or a rationale. . . . . As a treating healthcare provider, Dr. Del Gaizo is due significant weight. It is notable that a treating source has the opportunity to personally observe and interact with the claimant. However, this does not excuse him from an obligation to explain his professional conclusions.

(Tr. at 23.) Thus, the ALJ specifically addressed the conflict between Dr. Del Gaizo's opinion and the RFC, and declined to credit Dr. Del Gaizo's "check box" answers to the extent that

13

they did not provide sufficient explanation or rationale. The ALJ further found that the medical expert was also a specialist, that his opinions were consistent with the medical record, and that:

> because [of] the medical expert's explanation of his conclusions to the undersigned and because he was open to questioning by the representative, the undersigned gives greater credence to the medical expert.

(Tr. at 23.) See 20 C.F.R. §§ 404.1527(e)(2)(iii), (c)(3), (c)(6), 416.927(e)(iii), (c)(3), (c)(6). Thus, the ALJ explained the basis for the determination here, and the ALJ's analysis included a thorough review of the medical records and Plaintiff's testimony.[8]

Ultimately, the ALJ made a determination based on the evidence presented, and it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, explained the reasons for the weight he gave to the opinion evidence, and supported that explanation with substantial evidence.

---

[8] Plaintiff testified at the hearing on January 12, 2015, that he could walk or stand for 15 to 20 minutes at a time and would then need to sit down for an hour. (Tr. at 19, 84.) This is consistent with the ALJ's finding that Plaintiff was capable of sedentary work. Plaintiff testified that he would need his cane, but the ALJ addressed this with the vocational expert, and the vocational expert testified that the same number of positions would still be available with the use of a cane for standing and walking. (Tr. at 65.)

14

B.  Appeals Council Evidence

Plaintiff also contends that the Appeals Council erred by failing to remand the case based on a letter submitted as part of the Appeals Council review in this case. (Pl.'s Br. at 8.) After the ALJ's decision was issued on October 30, 2015, Plaintiff returned to see Dr. Del Gaizo on December 9, 2015. Following that appointment, Dr. Del Gaizo provided a letter, which states:

> David Tickle was seen at UNC Health Care system on 12/09/2015 for a follow up of his left total knee arthroplasty, as well as right knee pain. David Tickle has right knee pain with severe arthritis; due to this he meets the criteria for 1.02A.[9]

(Tr. at 577.)

The Appeals Council considered the letter but concluded that it did not provide a basis for changing the ALJ's decision in this case. (Tr. at 1-5.) Plaintiff contends that the letter shows that Plaintiff continued to suffer from right knee pain and that his arthritis in his right knee was progressively worsening, and had worsened to the point that Plaintiff met Listing 1.02A for his right knee.

In cases where the Appeals Council has considered evidence submitted by the claimant but denied review, on appeal the Court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec., Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). However, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review."

---

[9] The related medical records from December 9, 2015, were not included.

15

Meyer, 662 F.3d at 705-706. In this regard, the Fourth Circuit has held that the "lack of such additional fact finding does not render judicial review 'impossible' — as long as the record provides 'an adequate explanation of the Commissioner's decision.' " Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

In this case, as discussed above, the ALJ considered and addressed the evidence regarding Plaintiff's right knee pain. Even with Dr. Del Gaizo's December 2015 letter included, the ALJ's determination is still supported by substantial evidence, considering the record as a whole. In reaching this conclusion, the Court notes first that Dr. Del Gaizo's cursory statement that Plaintiff's right knee meets the criteria for Listing 1.02A does not provide any substantive basis or analysis that undermines the ALJ's determination in this case, and the letter is not much more than a conclusory assertion on an issue reserved to the Commissioner. Even more importantly, Dr. Del Gaizo's letter does not compete with the evidence underlying the ALJ's decision because Dr. Del Gaizo's letter reflects only that Plaintiff "meets" the criteria as of December 2015, while the ALJ's decision considers the period only through the date of that decision, October 30, 2015. Notably, the fact that Plaintiff's right knee continued to worsen is not unexpected and does not conflict with the ALJ's determination as of October 30, 2015. Indeed, it is entirely possible that Plaintiff's right knee worsened more quickly than anticipated and that medical records from December 2015 would reflect that by December, Plaintiff met Listing 1.02A for his right knee. Plaintiff

16

remains free to submit a new claim with respect to his right knee based on alleged worsening of his condition that may be reflected in those later records. However, that is a separate determination not before this Court, and the Court concludes that Dr. Del Gaizo's December 2015 statement does not require remand, where the letter does not conflict with or compete with the evidence underlying the ALJ's decision, and where the letter does not render the ALJ's decision of October 30, 2015 unsupported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 4th day of August, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge